GIBSON, DUNN & CRUTCHER LLP
MEGAN COONEY, SBN 295174
 mcooney@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone:    949.451.3800
Facsimile:     949.451.4220

JASON C. SCHWARTZ (*pro hac vice* forthcoming)
 jschwartz@gibsondunn.com
LUCAS TOWNSEND (*pro hac vice* forthcoming)
 ltownsend@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:     202.467.0539

Attorneys for Petitioners AMAZON.COM, INC. and
AMAZON LOGISTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON LOGISTICS, INC., <br><br> Petitioners, <br><br> v. <br><br> AHMED EBRAHIM ALMOWLAD, KEVIN ESTRADA, FALOPE FATUNMISE, KENYA GATTISON, LAQUITA HOUSTON, RAFAEL JUAREZ, FELIX MEDINA, HELAI OLOMI, BEN MOHAED ALA OTMAN, MATTHEW TALBOT, and BRENDA WARREN, <br><br> Respondents. | CASE NO. <br><br> **PETITIONERS AMAZON.COM, INC.'S AND AMAZON LOGISTICS, INC.'S PETITION FOR ORDER TO COMPEL ARBITRATION** |

Petitioners Amazon.com, Inc. and Amazon Logistics, Inc. (collectively, "Amazon") hereby petition the Court to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), or alternatively under the Delaware Arbitration Act, 10 Del. C. § 5701 *et seq.*, or the California Arbitration Act, Cal. Code Civ. Proc., § 1280 *et seq.*, in accordance with the terms of the parties' arbitration agreements.

## INTRODUCTION

1. Respondents are all individuals who provided local delivery services to Amazon in California pursuant to an agreement that required all disputes to be resolved on an individual basis through binding arbitration.

2. Respondents provided their services as an independent contractor, and they received the opportunities and benefits of such a relationship. But Respondents later joined a putative collective action and a putative class action against Amazon seeking to change their status to employees. Each putative class member asserts claims under federal law and related claims under state law.

3. Respondents has refused to resolve this dispute by binding arbitration despite their agreements to do so.

4. Amazon now respectfully petitions the Court for an Order, pursuant to Section 4 of the FAA, 9 U.S.C. § 4; Section 5703 of the Delaware Arbitration Act, 10 Del. C. § 5703; and Section 1281.2 of the California Arbitration Act, Cal. Civ. Proc. Code § 1281.2, to compel Respondents to arbitrate this dispute with Amazon.

## BACKGROUND

5. Affiliates of Amazon.com, Inc. sell products through a variety of channels, including the Amazon.com website, mobile applications, and retail locations like Whole Foods Market. To deliver products to customers, Amazon contracts with delivery providers of various types and sizes, including major carriers such as United Parcel Service, small regional courier companies called "Delivery Service Providers," and individual entrepreneurs called "Delivery Partners. Delivery Partners sign up to become eligible to perform delivery blocks through a smartphone application-based program called Amazon Flex. Delivery Partners then use personal vehicles to make local deliveries of groceries, food, and other goods to customers.

6.  Respondents are individual entrepreneurs who enrolled in the Amazon Flex program to provide local delivery services ("Delivery Partners") in the Northern District of California. Respondents downloaded the Amazon Flex app and accepted Amazon's Independent Contractor Terms of Service (the "TOS") when enrolling in the program. Although the TOS varied in some respects depending on which version of the agreement Respondents accepted, all versions of the TOS included an agreement to resolve any disputes arising out of or relating to the agreement, including termination of the agreement, Respondents' participation in the program, or to Respondent's performance of services, through final and binding arbitration. All versions of the TOS specified that the FAA governed the arbitration agreement and that either Washington or Delaware state law otherwise governed the agreement.

7.  Each of the Respondents clicked their acceptance of the TOS and the arbitration agreement. None of the Respondents opted out of arbitration.

8.  Respondents subsequently participated in, and enjoyed the benefits of, the Amazon Flex program.

9.  In 2016, three plaintiffs filed a putative nationwide collective action under the federal Fair Labor Standards Act ("FLSA") and a putative state-law class action against Amazon in the U.S. District Court for the Western District of Washington. *See Rittmann et al. v. Amazon.com Inc. et al.*, No. 2:16-cv-1554 (W.D. Wash. filed Oct. 4, 2016) ("*Rittmann* Dkt."). The plaintiffs sought to change the classification of Delivery Partners to employees, among other relief.

10. In 2016 and 2019, Amazon moved to compel one of the plaintiffs in the case at the time to arbitrate his claims. In 2019, the district court in *Rittmann* declined to compel arbitration under the FAA and Washington state law, and the Ninth Circuit affirmed. *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021).

11. Following Amazon's initial motion to compel arbitration and the supplemental briefing in support of that motion, the number of plaintiffs in the case swelled to more than 100 through successive amended complaints, consolidations, and opt-in notices. Many add-on plaintiffs, including Respondent, accepted different arbitration agreements than the agreement considered in 2019.

12. The *Rittmann* district court litigation has been stayed a total of 2,343 days (more than 6.4 years)—and therefore, despite its age, it is at an early stage of the proceedings.

13. The district court recently entered a scheduling order on May 14, 2024, allowing Amazon to renew its motion to compel arbitration at an undetermined future date. *Rittmann* Dkt., ECF no. 298. Thus, the question of whether plaintiffs in *Rittmann* must arbitrate their claims remains unresolved.

14. Additionally, on November 17, 2020, attorneys representing Respondents Falope Fatunmise and La Quita Houston threatened to initiate arbitration with Amazon on their claims of alleged independent contractor misclassification and/or alleged wage and hour violations. On April 19, 2024, attorneys representing Respondent Falope Fatunmise again threatened to initiate arbitration with Amazon on the same grounds. Yet they still purport to bring those claims in *Rittmann* as well.

15. Additionally, on January 28, 2020, Kenya Gattison filed a demand for arbitration on her claims of alleged independent contractor misclassification and/or alleged wage and hour violations. Amazon paid arbitration fees to AAA and defended the arbitration. Yet she still purports to bring those claims in *Rittmann* as well.

**PARTIES**

16. Petitioner Amazon.com, Inc. is a Delaware corporation headquartered in Seattle, Washington.

17. Petitioner Amazon.com Logistics, Inc. is a Delaware corporation headquartered in Seattle, Washington.

18. On or about August 14, 2020, Respondent Ahmed Ebrahim Almowlad opted into the litigation in *Rittmann*.

19. On or about November 25, 2019, Respondent Kevin Estrada opted into the litigation in *Rittmann*.

20. On or about August 14, 2020, Respondent Falope Fatunmise opted into the litigation in *Rittmann*.

21. On or about February 3, 2017, Respondent Kenya Gattison opted into the litigation in *Rittmann*.

22. On or about August 14, 2020, Respondent LaQuita Houston opted into the litigation in *Rittmann*.

23. On or about November 12, 2019, Respondent Rafael Juarez opted into the litigation in *Rittmann*.

24. On or about October 28, 2019, Respondent Felix Medina opted into the litigation in *Rittmann*.

25. On or about November 12, 2019, Respondent Helai Olomi opted into the litigation in *Rittmann*.

26. On or about August 14, 2020, Respondent Ben Mohaed Ala Otman opted into the litigation in *Rittmann*.

27. On or about August 14, 2020, Respondent Matthew Talbot opted into the litigation in *Rittmann*.

28. On or about October 28, 2019, Respondent Brenda Warren opted into the litigation in *Rittmann*.

29. Respondent Ahmed Ebrahim Almowlad last provided services under the Amazon Flex program in San Leandro, California, which is in this judicial district.

30. Respondent Kevin Estrada last provided services under the Amazon Flex program in South San Francisco, California, which is in this judicial district.

31. Respondent Falope Fatunmise last provided services under the Amazon Flex program in Richmond, California, which is in this judicial district.

32. Respondent Kenya Gattison last provided services under the Amazon Flex program in Richmond, California, which is in this judicial district.

33. Respondent LaQuita Houston last provided services under the Amazon Flex program in Richmond, California, which is in this judicial district.

34. Respondent Rafael Juarez last provided services under the Amazon Flex program in San Francisco, California, which is in this judicial district.

35. Respondent Felix Medina last provided services under the Amazon Flex program in Milpitas, California, which is in this judicial district.

36. Respondent Helai Olomi last provided services under the Amazon Flex program in Dublin, California, which is in this judicial district.

37. Respondent Ben Mohaed Ala Otman last provided services under the Amazon Flex program in South San Francisco, California, which is in this judicial district.

38. Respondent Matthew Talbot last provided services under the Amazon Flex program in San Francisco, California, which is in this judicial district.

39. Respondent Brenda Warren last provided services under the Amazon Flex program in Richmond, California, which is in this judicial district.

## JURISDICTION AND VENUE

40. This Court has subject matter jurisdiction over this petition pursuant to 28 U.S.C. §§ 1331 and 1367. In the underlying dispute, plaintiffs filed a putative collective action against Amazon under the federal FLSA and putative class claims under related state-law theories. *See Rittmann* Dkt., ECF No. 262, ¶¶ 40–41. Respondents are either named plaintiffs in that action, or they opted in using the FLSA's mechanism for a collective action and thus have "become parties" in the litigation. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *see also* 29 U.S.C. § 216(b) (under the FLSA, an opt-in plaintiff becomes "a party plaintiff to any such action [when] he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"). Amazon seeks to compel arbitration of Respondents' federal claims and related state-law claims against Amazon. Thus, this Court has federal question jurisdiction and supplemental jurisdiction. *See Vaden v. Discover Bank*, 556 U.S. 49, 62, 69 n.18 (2009).

41. The Court also has personal jurisdiction over Respondents. Respondents provided services in the State through Amazon's Flex program and consented to arbitration at or near the locations at which they provided services. *See* Rodgers Decl. ¶¶ 27-37, 52. Thus, the dispute "arise[s] out of or relate[s] to" Respondents' "contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quotations omitted).

42. In addition, venue is proper pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 4. FAA permits any party "aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition "any United States district court . . . for an order directing that such

arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If arbitration is ordered, "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." *Id.* The arbitration provisions at issue here authorize any arbitration "in the state where [Respondent] provide[s] or ha[s] provided Services" or "within 45 miles from the last location in which [Respondent] provided Services," depending on the version of the TOS accepted by each Respondent. *See* Declaration ¶ 22. Either way, for Respondents, the location of the arbitration is within this Court's jurisdiction. And because Section 4 "confines the arbitration to the district in which the petition to compel is filed," *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001) (emphasis omitted), an order compelling arbitration by this Court would enforce terms of the arbitration agreement.

## STATEMENT OF FACTS

43. Delivery Partners deliver orders of food and goods locally to customers. Delivery Partners sign up to make deliveries locally using the Amazon Flex app, and then are free to deliver packages using their personal vehicles.

44. Respondent Ahmed Ebrahim Almowlad worked as a Delivery Partner from about September 2017 to December 2018. On September 13, 2017, Respondent first accepted a version of Amazon's TOS. At the time, Version 10 of the TOS was currently in effect.

45. Respondent Kevin Estrada worked as a Delivery Partner from about October 2016 to November 2020. On October 21, 2016, Respondent first accepted a version of Amazon's TOS. At the time, Version 9 of the TOS was currently in effect.

46. Respondent Falope Fatunmise worked as a Delivery Partner from about November 2017 to March 2019. On November 12, 2017, Respondent first accepted a version of Amazon's TOS. At the time, Version 10 of the TOS was currently in effect.

47. Respondent Kenya Gattison worked as a Delivery Partner from about May 2017 to February 2018. On May 2, 2017, Respondent first accepted a version of Amazon's TOS. At the time, Version 10 of the TOS was currently in effect.

48. Respondent LaQuita Houston worked as a Delivery Partner from about March 2020 to May 2020. On March 7, 2020, Respondent first accepted a version of Amazon's TOS. At the time, Version 11 of the TOS was currently in effect.

49. Respondent Rafael Juarez worked as a Delivery Partner from about December 2016 to January 2020. On December 15, 2016, Respondent first accepted a version of Amazon's TOS. At the time, Version 9 of the TOS was currently in effect.

50. Respondent Felix Medina worked as a Delivery Partner from about October 2017 to March 2021. On October 11, 2017, Respondent first accepted a version of Amazon's TOS. At the time, Version 10 of the TOS was currently in effect.

51. Respondent Helai Olomi worked as a Delivery Partner from about June 2017 to March 2020. On June 21, 2017, Respondent first accepted a version of Amazon's TOS. At the time, Version 10 of the TOS was currently in effect.

52. Respondent Ben Mohaed Ala Otman worked as a Delivery Partner from about April 2018 to July 2019. On April 25, 2018, Respondent first accepted a version of Amazon's TOS. At the time, Version 10 of the TOS was currently in effect.

53. Respondent Matthew Talbot worked as a Delivery Partner from about March 2020 to September 2020. On March 19, 2020, Respondent first accepted a version of Amazon's TOS. At the time, Version 11 of the TOS was currently in effect.

54. Respondent Brenda Warren worked as a Delivery Partner from about December 2016 to May 2018. On December 21, 2016, Respondent first accepted a version of Amazon's TOS. At the time, Version 9 of the TOS was currently in effect.

55. To sign up to make deliveries, prospective Amazon Flex Drivers like Respondents were required to download the Amazon Flex app on their smartphones and accept the TOS twice by clicking a button indicating that the user agreed to the TOS. Prospective delivery partners were free to spend as much time as they wanted to review the TOS and were required to scroll to the end of the agreement on the app before accepting.

56. Amazon occasionally updates the TOS for the Amazon Flex program, so Respondents agreed to slightly different versions. Respondents Kevin Estrada, Rafael Juarez, and Brenda Warren

agreed to Version 9; Respondents Ahmed Ebrahim Almowlad, Falope Fatunmise, Kenya Gattison, Felix Medina, Helai Olomi, and Ben Mohaed Ala Otman agreed to Version 10.

57.   The first page of both versions 9 and 10 of the TOS state that by accepting, the Amazon Flex Driver "AGREE[S] TO RESOLVE DISPUTES BETWEEN [THEMSELF] AND AMAZON ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION."  Versions 9 and 10 of the TOS both cautioned, "[i]f you do not agree with these terms, do not use the Amazon Flex app or participate in the Program or provide any Services."

58.   Later in the agreements, the TOS lay out the full terms of the arbitration agreement in Section 11 and require the arbitration of all disputes arising out of the individual's relationship with Amazon.  Specifically, the TOS state:

> SUBJECT TO YOUR RIGHT TO OPT OUT OF ARBITRATION, THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES.

In this section, the TOS also explicitly provide that "THE PARTIES AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS OR COLLECTIVE BASIS," and that "PARTIES WAIVE ANY RIGHT TO PARTICIPATE IN OR RECEIVE ANY RELIEF FROM ANY NON-INDIVIDUAL PROCEEDING REFERENCED ABOVE."  Furthermore, the TOS state that "NO ARBITRATOR SELECTED TO ARBITRATE ANY DISPUTE BETWEEN THE PARTIES IS AUTHORIZED TO ARBITRATE ANY DISPUTE ON A CLASS, COLLLECTIVE [sic] OR REPRESENTATIVE BASIS."

59.   The TOS also provide that "[t]he parties agree that the Federal Arbitration Act and applicable federal law will govern any dispute that may arise between the parties" relating to the arbitration agreement.  The interpretation of the remainder of the TOS is governed by "the law of the state of Washington."

60. On the dates listed above in ¶¶ 44 through 54, each Respondent clicked a button indicating agreement to the TOS as a whole and then clicked another button specifically affirming agreement to arbitrate.

61. Respondents Kevin Estrada, Falope Fatunmise, LaQuita Houston, Rafael Juarez, Felix Medina, Helai Olomi, and Matthew Talbot did the same for Version 11 of the TOS. The only difference from the above language were that Version 11 does not provide the ability to opt out; it provides that "[t]he arbitration will take place at a mutually-convenient location within 45 miles from the last location in which you provided Services, or at another mutually-convenient location, or at any location ordered by a court with personal jurisdiction over you and Amazon"; and the choice-of-law provision specifies that "[i]f, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section 11 of this Agreement."

62. Version 11 also delegates threshold disputes over arbitrability, including any dispute over the scope of the arbitration provision, to the arbitrator. It does so by adopting the AAA Commercial Arbitration Rules. Those rules give the arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures R-7(a), at (Sept. 1, 2022), https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf. The TOS also include additional delegation language, providing that, subject to certain exceptions, the arbitrator must resolve disputes over the "arbitrability of claims" under Section 11(a) of the agreement.

63. Respondent Helai Olomi also agreed to Version 12 of the TOS. The only difference from Version 11 is that Version 12 provides the specifications for what must be included in a written demand for arbitration, provides for attorney's fees, costs and expenses related to pleadings the do not comply with Federal Rules of Civil Procedure 11, and provides a mechanism for confirmation of a final arbitration award. Version 12 also provides that "[i]f any portion of the class, collective or representative action waiver is found to be void or unenforceable, then the portion of the waiver found

void or unenforceable shall be severed from this Agreement, and all other parts and provisions shall remain in full force and effect," and goes on to describe the impact of such a finding.

64. Respondent Ahmed Ebrahim Almowlad also agreed to Version 13 of the TOS. The treatment of arbitration in Version 13 is identical to Version 12.

65. Notwithstanding the arbitration and class waiver provisions in the TOS, in 2016, three plaintiffs filed a putative nationwide collective action under the federal FLSA and a putative state-law class action against Amazon in the U.S. District Court for the Western District of Washington. *See Rittmann* Dkt., No. 2:16-cv-1554 (W.D. Wash. filed Oct. 4, 2016). The plaintiffs sought to change the classification of Flex drivers to employees, among other relief.

66. Respondents joined or opted into the putative class action against Amazon the dates listed above in ¶¶ 16 through 26.

67. As explained above, the question of whether plaintiffs in *Rittmann* must arbitrate their claims remains unresolved.

68. Amazon is therefore filing this action, the supporting Declarations of John Rodgers, Sean P. Lynch, and Peter Nickerson, with accompanying exhibits, and the supporting Memorandum of Law, to enforce the Arbitration Provision in the TOS and to prevent Respondents from taking any action contrary to the Arbitration Provision.

## CLAIMS FOR RELIEF

### COUNT I: ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT

69. Petitioners incorporate by reference ¶¶ 1 through 68, above.

70. The FAA applies to the TOS as a matter of law and as expressly provided in the TOS.

71. Amazon is a party aggrieved by Respondents' refusal to arbitrate under a written agreement for arbitration and, save for the arbitration agreement, the Court has jurisdiction under Title 28 of the U.S. Code, Section 1331.

72. Section 4 of the FAA, 9 U.S.C. § 4, provides Petitioners a cause of action to compel Respondents to resolve the dispute with Petitioners through arbitration. Section 4 of the FAA, 9 U.S.C. § 4, provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which,

save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

73. The Arbitration Agreement in the TOS constitutes a written agreement that is valid and enforceable under the FAA. Section 2 of the FAA, 9 U.S.C. § 2, provides in relevant part:

> A . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

74. The Arbitration Agreement is a written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising under the TOS.

75. The TOS is not a "contract[] of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In making local deliveries as part of the Amazon Flex program, Respondents did not "play a direct and 'necessary role in the free flow of goods' across borders," and they were not "actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce" as defined by the FAA. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022). Therefore, Respondents are not exempt from the FAA.

76. The Arbitration Agreement is valid, irrevocable, and enforceable.

77. The Arbitration Agreement applies to all claims asserted by Respondent in the operative Rittmann complaint (the "Complaint").

78. The Arbitration Agreement contractually requires Respondent to submit "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this agreement" to be resolved "only on an individual basis and not on a class or collective basis" by "final and binding arbitration" at "a mutually convenient location within 45 miles from the last location in which [Respondent] provided services" (under TOS 10 and earlier) or "at a mutually-convenient

location within 45 miles from the last location in which you provided Services, or at another mutually-convenient location, or at any location ordered by a court with personal jurisdiction over you and Amazon" (under TOS 11 and later) under American Arbitration Association rules.

79. The claims set out in the Complaint are "arising out of or relating . . . to" the TOS and therefore fall within the scope of the Arbitration Agreement in the TOS.

80. Nevertheless, Respondents have disregarded their contractual obligations to arbitrate the claims asserted in the Complaint.

81. The Court should enter an Order compelling Respondents to arbitrate all claims raised or that could be raised in the Complaint.

82. Petitioners are entitled to enforce the Arbitration Agreement under its terms, as well as under applicable law.

## COUNT II:  ARBITRATION PURSUANT TO
## THE DELAWARE ARBITRATION ACT

83. Petitioners incorporate by reference ¶¶ 1 through 82, above.

84. The Delaware Arbitration Act applies to the TOS signed by Respondents listed in ¶¶ 61-64 who assented to Versions 11 and later of the TOS as a matter of law and as provided in the TOS.

85. Amazon is a party aggrieved by Respondents' refusal to arbitrate under a written agreement for arbitration and, save for the arbitration agreement, the Court has supplemental jurisdiction under Title 28 of the U.S. Code, Section 1367.

86. The Delaware Arbitration Act provides Petitioners a cause of action to compel Respondents listed in ¶¶ 61-64 to resolve the dispute with Petitioners through arbitration.  Section 5703 provides in relevant part:

> A party aggrieved by the failure of another to arbitrate may file a complaint for an order compelling arbitration.  Where there is no substantial question whether a valid agreement to arbitrate in this State was made or complied with the Court shall order the parties to proceed with arbitration.  Where any such question is raised it shall be tried forthwith in said Court.

87. The Arbitration Agreement in the TOS constitutes a written agreement that is valid and enforceable under the Delaware Arbitration Act. Section 5701 provides in relevant part:

> A written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

88. The Arbitration Agreement is a written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising under the TOS.

89. The Arbitration Agreement is valid, irrevocable, and enforceable.

90. The Arbitration Agreement applies to all claims asserted in the Complaint by Respondents listed in ¶¶ 61-64 .

91. The Arbitration Agreement contractually requires Respondents listed in ¶¶ 61-64 to submit "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this agreement" to be resolved "only on an individual basis and not on a class or collective basis" by "final and binding arbitration" at "at a mutually-convenient location within 45 miles from the last location in which you provided Services, or at another mutually-convenient location, or at any location ordered by a court with personal jurisdiction over you and Amazon" under American Arbitration Association rules.

92. The claims set out in the Complaint are "arising out of or relating . . . to" the TOS and therefore fall within the scope of the Arbitration Agreement in the TOS.

93. Nevertheless, Respondents listed in ¶¶ 61-64 has disregarded her contractual obligation to arbitrate the claims asserted in the Complaint.

94. The Court should enter an Order compelling these Respondents to arbitrate all claims raised or that could be raised in the Complaint.

95. Petitioners are entitled to enforce the Arbitration Agreement under its terms, as well as under applicable law.

## COUNT III:  ARBITRATION PURSUANT TO THE CALIFORNIA ARBITRATION ACT

96. Petitioners incorporate by reference ¶¶ 1 through 95, above.

97. Alternatively, the California Arbitration Act applies to the TOS as the law of the forum and the law of the State in which Respondents provided services.

98. Amazon is a party aggrieved by Respondents' refusal to arbitrate under a written agreement for arbitration and, save for the arbitration agreement, the Court has supplemental jurisdiction under Title 28 of the U.S. Code, Section 1367.

99. The California Arbitration Act provides Petitioners a cause of action to compel Respondents to resolve the dispute with Petitioners through arbitration. Section 1281.2 provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ."

100. The Arbitration Agreement in the TOS constitutes a written agreement that is valid and enforceable under the California Arbitration Act. Section 1281 provides in relevant part: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

101. The Arbitration Agreement is a written agreement in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising under the TOS.

102. The Arbitration Agreement is valid, enforceable, and irrevocable.

103. The Arbitration Agreement applies to all claims asserted by Respondents in the Complaint.

104. The Arbitration Agreement contractually requires Respondent to submit "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this agreement" to be resolved "only on an individual basis and not on a class or collective basis" by "final and binding arbitration" at "a mutually convenient location within 45 miles from the last location in which [Respondent] provided services" (in Version 10 of the TOS) or "at a mutually-convenient location within 45 miles from the last location in which you provided Services, or at another mutually-convenient location, or at any location ordered by a court with personal jurisdiction over you and Amazon" (in Versions 11 and 12 of the TOS) under American Arbitration Association rules.

105. The claims set out in the Complaint are "arising out of or relating . . . to" the TOS and therefore fall within the scope of the Arbitration Agreement in the TOS.

106. Nevertheless, Respondents have disregarded their contractual obligation to arbitrate the claims asserted in the Complaint.

107. The Court should enter an Order compelling Respondents to arbitrate all claims raised or that could be raised in the Complaint.

108. Petitioners are entitled to enforce the Arbitration Agreement under its terms, as well as under applicable law.

WHEREFORE, Petitioners request that the Court order the following relief:

1. An Order, pursuant to Section 4 of the FAA, 9 U.S.C. § 4, compelling Respondents to pursue in arbitration any dispute with Amazon relating to the claims in the Complaint; or, in the alternative,

2. An Order, pursuant to the Delaware Arbitration Act, 10 Del. C. § 5701, compelling Respondents listed in ¶¶ 61-64 as signatories of TOS versions 11 and later to pursue in arbitration any dispute with Amazon relating to the claims in the Complaint; or, in the alternative,

3. An Order, pursuant to the California Arbitration Act, Cal. Civ. Proc. Code § 1281.2, compelling Respondents to pursue in arbitration any dispute with Amazon relating to the claims in the Complaint; and

4. Any further relief the Court deems necessary.

DATED: June 14, 2024

        GIBSON, DUNN & CRUTCHER LLP
        JASON C. SCHWARTZ
        MEGAN COONEY
        LUCAS TOWNSEND

By: /s/ *Megan Cooney*
        Megan Cooney

Attorneys for Petitioners AMAZON.COM INC., and AMAZON LOGISTICS, INC.